UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FORRENCE ORCHARDS, INC.,

                        Plaintiff,                    8:24-cv-525 (BKS/PJE)

v.

TD BANK and TRUIST BANK,

                        Defendants.

---

**Appearances:**

*For Plaintiff:*
Jed M. Weiss
Mandelbaum Barrett, P.C.
570 Lexington Avenue, 21st Floor
New York, NY 10022

*For Defendant TD Bank:*
Katelynn Gray
Duane Morris LLP
1540 Broadway
New York, NY 10036

John I. Coster IV
Duane Morris LLP
230 Park Avenue, Suite 1130
New York, NY 10169

Michael S. Zullo
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

*For Defendant Truist Bank:*
Stephen J. Steinlight
Sophia N. Dauria
Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff Forrence Orchards, Inc. brings this diversity action against Defendants TD Bank[1] and Truist Bank ("Truist"), asserting, as against TD Bank only, claims for breach of contract and negligence; as against Truist only, a claim for unjust enrichment; and as against both, a claim for deceptive acts or practices prohibited under Section 349 of the New York General Business Law.[2] (Dkt. No. 1). Currently before the Court are Defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. Nos. 15, 20). The motions are fully briefed. (Dkt. Nos. 15-1, 20-1, 27, 28, 29). For the following reasons, the Court grants Defendants' motions to dismiss.

**II.    FACTS[3]**

Plaintiff is an "apple orchard farm located in Peru, New York." (Dkt. No. 1, ¶ 14). Plaintiff established a relationship with TD Bank, "a national bank with a net worth of approximately $150 billion," around 1990 and "opened two accounts with TD Bank, one being its checking account that Plaintiff intended to use in the regular course of its business activities, and the other to manage the funds earmarked for its employees' profit-sharing plan accounts." (*Id.* ¶¶ 17–18). As part of their dealings, Plaintiff and TD Bank entered into the "Cash Management Services Agreement," (the "CMSA") of which paragraph 10 states:

---

[1] TD Bank states that it has been "incorrectly named" in the complaint, and that its actual name is "TD Bank, N.A." (Dkt. No. 20-1, at 6 n.1).

[2] Plaintiff's claim refers to the "New York BCL § 349," (Dkt. No. 1, at 7), however it is clear from both the context of the claim and Plaintiff's later filings that Plaintiff meant to refer to Section 349 of the New York General Business Law, (*see e.g.*, Dkt. No. 27, at 19 ("[Plaintiff] has stated a plausible NY Gen. Bus. Law ¶ 349 claim contrary to both TD [Bank] and Truist's assertions.")).

[3] The facts are drawn from Plaintiff's complaint, (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

> Fraud Detection/Deterrence; Positive Pay. Bank offers certain products and services such as Positive Pay (with or without positive payee validation), ACH Positive Pay, and Account blocks and filters that are designed to detect and/or deter check, automated clearing house ("ACH") or other payment system fraud. While no product or service will be completely effective, Bank believes that the products and services it offers will reduce the likelihood that certain types of fraudulent items or transactions will be paid against Customer's Account. Failure to use such products or services could substantially increase the likelihood of fraud.

(*Id.* ¶ 19). Additionally, paragraph 14 of Appendix II to the CMSA states:

> Reversing Entries/Files. If Customer discovers that any Entry or file Customer has initiated was in error, it may use the [ACH Services] to correct the Entry or file by initiating a reversal or adjustment, or Customer may notify Bank of such error and Bank will utilize reasonable efforts on behalf of Customer, consistent with the NACHA Rules, to correct the Entry or file by initiating a reversal or adjustment of such Entry or file.

(*Id.* ¶ 20).

On or about October 24, 2023, Plaintiff's accounts with TD Bank experienced multiple transfers that Plaintiff had not authorized or initiated and of which Plaintiff had no knowledge. (*See id.* ¶¶ 23–27). The first transfer took approximately $440,000 from the Profit-Sharing Account and moved it to the Checking Account. (*Id.* ¶ 24). After this transfer took place, $99,265 was wired from the Checking Account to an account at JP Morgan Chase, $199,825 was wired from the Checking Account to an account at Bank of America, and $399,685 was wired from the Checking Account to an account at Truist. (*See id.* ¶¶ 25–26).

Plaintiff learned about the unauthorized transfers after being contacted by Bank of America. (*Id.* ¶ 27). Plaintiff then "logged into its TD Bank account to realize the magnitude of the theft that occurred," and "[p]romptly thereafter, Plaintiff contacted TD Bank, as well as the New York State Police and the Federal Bureau of Investigations." (*Id.* ¶¶ 27–28).

3

According to Plaintiff, "TD bank was completely uncooperative in Plaintiffs [sic] attempts to recover Plaintiff's unlawfully transferred funds." (*Id.* ¶ 28). TD Bank told Plaintiff that Plaintiff "had five days to request a reversal to recover the money, which of course Plaintiff acted upon immediately." (*Id.* ¶ 29). JP Morgan Chase and Bank of America "promptly recover[ed] most of the money unlawfully transferred to their banks, returning all or substantially all of Plaintiff's money to its TD Bank accounts." (*Id.* ¶ 30). Plaintiff alleges that "TD Bank made several requests . . . on Truist to return the funds, though Truist refused to return the money that it unlawfully received." (*Id.* ¶ 31). Finally, "[i]n January 2024[,] Plaintiff received a 'phantom' return deposit of $10,000.00 into its TD Bank account with no indication of where it came from," which TD Bank eventually revealed had come from Truist. (*Id.* ¶ 32).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

### A. Article 4-A Preemption

TD Bank contends that "Plaintiff's common-law claims for breach of contract and negligence are subject to dismissal as a matter of law because they are preempted by the New York UCC," specifically Article 4-A. (Dkt. No. 20-1, at 15–17). Plaintiff disputes that its common law claims are preempted. (Dkt. No. 27, at 11–16).

"Article 4–A of the New York Uniform Commercial Code governs electronic funds transfers, commonly known as wholesale wire transfers." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 87 (2d Cir. 2010) (citing N.Y. U.C.C. § 4-A-102 & cmt). The drafters of Article 4-A made a "deliberate decision" "to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles." N.Y. U.C.C. § 4-A-102 cmt. "Prior to Article 4A's adoption, courts resolved disputes over funds transfers in part by 'referring to general principles of common law or equity.' Article 4A rejected this piecemeal approach in favor of a more disciplined regime under which common law claims at odds with Article 4A are no longer permitted." *Ma*, 597 F.3d at 89 (quoting N.Y. U.C.C. § 4-A-102 cmt).

But "[n]ot all common law claims are per se inconsistent with this regime." *Id.* (citations omitted). "For Article 4A purposes, 'the critical inquiry is whether the provisions protect against the type of underlying injury or misconduct alleged in a claim.'" *Id.* at 89–90. "[C]ommon law claims about the existence of unauthorized wire transfers or an unauthorized signature on a check, and the mechanics of how those transactions were conducted, fall within the regime of Article 4-A because Section 4-A-204 provides the exclusive means by which a bank has a duty to refund a customer for such an unauthorized payment," *Markatos v. Citibank, N.A.*, No. 24-cv-803, 2024 WL 5154487, at *7, 2024 U.S. Dist. LEXIS 229045, at *20 (S.D.N.Y. Dec. 18, 2024)

5

(internal quotation marks and citations omitted). "In contrast, claims *not* based on the mechanics of the transfer itself—such as claims 'based on Defendant's actions *before and after* the processing of the wire transfer'—are not always preempted." *Id.* 2024 WL 5154487, at *7, 2024 U.S. Dist. LEXIS 229045, at *20–21 (quoting *Jakob v. JPMorgan Chase Bank, N.A.*, 639 F. Supp. 3d 406, 412 (E.D.N.Y. 2022).

Here, Plaintiff asserts two common law claims against TD, breach of contract and negligence. Plaintiff alleges TD Bank breached the contract between them in two ways: first, "by unlawfully transferring Plaintiff's funds without Plaintiff's knowledge or authorization," and second, by "fail[ing] and refus[ing] to return Plaintiff's funds." (Dkt. No. 1, ¶¶ 35–36). With respect to its negligence claim, Plaintiff alleges that TD Bank breached its duty of care to Plaintiff "by allowing the unauthorized transfers" of its funds. (*Id.* ¶¶ 51–52). Because "[w]hether the bank or customer bears the risk of loss for a fraudulent wire transfer is determined by the interlocking provisions of Sections 4-A-202, 4-A-203, and 4-A-204," *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 75 (S.D.N.Y. 2023), Plaintiff's claims, which exclusively deal with such questions, "fall[] entirely within the coverage of [Article 4-A]" and its "comprehensive risk allocation for unauthorized funds transfers." *Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 177 (E.D.N.Y. 2024) (quoting *Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp. 3d 302, 306–07 (S.D.N.Y. 2016)).

Plaintiff argues that its "common law claims are not preempted, as they clearly concern [TD Bank's] actions 'before and after' the fraudulent transfers occurred, and are not directed at the 'mechanics' of how the fraudulent transfers were made." (Dkt. No. 27, at 15 (citations omitted)). Here, Plaintiff refers to the execution of the CMSA "years prior to the fraudulent transfers" and actions that Plaintiff alleges TD Bank failed to take "[f]ollowing the fraudulent

transfers." (*Id.* at 15–16 (arguing that TD Bank "ignored [Plaintiff's] pleas, took no timely action, refused to effectuate any reversals, and thereafter refused to make any genuine efforts towards recover of the Stolen Funds")).

Plaintiff is correct that claims "concern[ing] activities not specifically addressed by Article 4A" are not preempted. *See Huang v. Hong Kong and Shanghai Banking Corp. LTD*, No. 20-cv-3548, 2022 WL 4123879 at *3, 2022 U.S. Dist. LEXIS 163235. at *10–11 (S.D.N.Y. Sept. 9, 2022) (citing *Perdesen v. MidFirst Bank*, 527 F. Supp. 3d 188, 193 (N.D.N.Y. 2021)). For example, in *Jakobs*, where the plaintiff sent a wire transfer to the wrong recipient and then immediately tried to cancel it but was unsuccessful, the court found that his breach of contract claim against the defendant bank was not preempted because the claim was based on the failure to cancel the wire transfer *prior* to its processing which he alleged was permitted under his contract with the defendant. 639 F. Supp. 3d at 411–12. In this instance, Plaintiff's complaint *references* events happening before and after the transfers, but the common law claims themselves concern only the fraudulent transfers and the bank's refusal to return the transferred funds, (*see* Dkt. No. 1, ¶¶ 36–37, 52), issues which, as discussed, are directly addressed under Article 4-A. Accordingly, the Court dismisses Plaintiff's breach of contract and negligence claims against TD Bank on the basis that they are preempted.

      **B.**    **Section 349**

Both TD Bank and Truist seek to dismiss Plaintiff's claims pursuant to Section 349 of the New York General Business Law. (Dkt No. 15-1, at 11–13; Dkt. No. 20-1, at 19–21). Defendants argue the claims should be dismissed for failure to allege conduct that is directed to consumers at

large or materially misleading. (Dkt No. 15-1, at 11–13; Dkt. No. 20-1, at 19–21).[4] Plaintiff responds that it "has satisfactorily pled all pre-requisites to raise GBL claims against both TD [Bank] and Truist." (Dkt. No. 27, at 20–23).

"Section 349 of New York's GBL outlaws '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 417 (2d Cir. 2023) (quoting N.Y. Gen. Bus. L. § 349(a)). "To state a claim for a § 349 violation, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id.* (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017)). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.' Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must 'demonstrate that the acts or practices have a broader impact on consumers at large.'" *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 26–27 (1995)); *see MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("[T]he injury must be to the public generally as distinguished from the plaintiff alone." (citing *Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 608 (E.D.N.Y. 1993))).

In support of its Section 349 claim, Plaintiff alleges that "Defendants have engaged in deceptive business practices by refusing to return Plaintiff's funds that were unlawfully

---

[4] Truist also argues that Plaintiff "fails to allege facts showing Truist's conduct proximately caused Plaintiff's injury." (Dkt. No. 15-1, at 13).

8

transferred from Plaintiff's account at TD Bank to Truist Bank in violation of" Section 349; that "Plaintiff is a 'consumer' pursuant to" Section 349; and that "Plaintiff has been injured as a result of Defendants' deceptive practices." (Dkt. No. 1, ¶¶ 40, 42–43). Such allegations are insufficient to plausibly plead that Defendants' conduct was consumer oriented because even "[a]ssuming Plaintiff's allegations to be true, the deception was aimed at Plaintiff"; "Defendant[s'] purported deceptive practice[]"—in this case, refusing to return the funds— was "not aimed at the public." *Violet Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384, 391 (W.D.N.Y. 2017); *see also Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 318 (E.D.N.Y. 2013) (dismissing Section 349 claim where "the allegedly deceptive practices to support the claim here—concerning [the] [p]laintiffs' debt to income ratio and trial default payments made—are specific to [the] [p]laintiffs, and do not universally apply to other mortgages or impact the public at large." (collecting cases)).

Plaintiff responds to Defendants' arguments that it has failed to allege the type of consumer-oriented conduct necessary to sustain a Section 349 claim by arguing that Defendants' businesses are generally oriented to consumers. (*See* Dkt. No. 27, at 20 ("TD indisputably engages in 'consumer-oriented conduct' on a minute-by-minute if not second-by-second basis, as it is a multi-billion-dollar global institution whose very purpose and existence is to provide consumer services and interact with and solicit the public (consumers)." (citing Dkt. No. 1, ¶ 3)); 22 ("Truist, like TD [Bank], is also a multi-billion-dollar global bank that engages in 'consumer-oriented conduct' with its every action." (citing Dkt. No. 1, ¶ 21))). But this misunderstands the relevant question, which is not whether the relevant parties generally are engaged in consumer-oriented conduct, but rather, whether the *specific conduct* that is deceptive is directed at the public at large.

Plaintiff's response attempts to paint its specific dispute as a wider issue, affecting consumers of its services more broadly. (*See, e.g.*, Dkt. No. 27, at 21 ("TD [Bank] instead refuses to initiate reversals, refuses to take timely or further action to cure the issue, and refuses to protect its customers' interests." (citation omitted)), 22 ("Truist's actions of preying on the public and profiteering off their financial harms are irreconcilably incongruent with the GBL's aims.")). Such attempts are unavailing, as the actual complaint does not contain any "allegations detailing specific conduct by [TD Bank or Truist] directed at other" consumers, "[n]or are there any factual allegations substantiating the existence of a purported policy or practice implemented by" TD Bank or Truist. *Seidler v. JPMorgan Chase Bank, N.A.*, No. 23-cv-1462, 2024 WL 344551, at *5, 2024 U.S. Dist. LEXIS 7067, at *13 (S.D.N.Y. Jan. 12, 2024), *report and recommendation adopted* 2024 WL 343299, 2024 U.S. Dist. LEXIS 16300 (S.D.N.Y. Jan. 30, 2024).

The Court also notes that even if Plaintiff had alleged the type of consumer-oriented conduct necessary to sustain a Section 349 claim, it is unclear how Defendants' conduct was materially misleading. "Conduct is materially misleading under" Section 349 "if it is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310–11 (S.D.N.Y. 2017) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26). Plaintiff states that "[t]he CMSA represents that TD [Bank] has mechanisms in place to prevent fraud, and that in the event of fraud, TD [Bank] will reverse the fraudulent transaction and make all 'reasonable efforts' to cure the issue." (Dkt. No. 27, at 20 (citing Dkt. No. 1, ¶¶ 19–20)). Plaintiff then argues (as stated above) that "these representations are entirely false, as upon the occurrence of clear cut and indisputable fraud . . . TD [Bank] instead refuses to initiate reversals, refuses to take timely or further action to cure the

issue, and refuses to protect its customers' interests." (*Id.* at 21 (citing Dkt. No. 1, ¶¶ 28–32)). But the CSMA states that "[w]hile no product or service will be completely effective," TD Bank believes that its services "will reduce the likelihood" of fraud, and the complaint itself acknowledges that "TD Bank made several requests" to Truist in an attempt to secure a return of the funds. (*See* Dkt. No. 1, ¶¶ 19, 31). To the extent Plaintiff argues that TD Bank represented it would make reasonable efforts and failed to do so, Plaintiff has not alleged any non-conclusory facts suggesting that Plaintiff's conduct was unreasonable. *See Seidler*, 2024 WL 344551, at *6, 2024 U.S. Dist. LEXIS 7067, at *17 ("There are no allegations, however, to support a plausible inference that [the defendant] did not conduct a bona fide investigation, as it had represented it would do. Although [the] [p]laintiffs are unhappy with the outcome of the investigation, that does not suggest that the investigation was not performed in good faith." (citation omitted)).

With respect to Truist, Plaintiff argues that "[b]ased on Truist's general interactions with the public and continued successful operation, it is likely that a 'reasonable consumer' would not expect Truist to utilize a 'misleading' general practice of treating fraudulent transfers as if they were windfalls, refusing to take action to rectify such occurrences, and taking a combative stance toward fraud victims." (Dkt. No. 27, at 22). But Plaintiff's complaint does not allege any facts indicating this is a reasonable assumption, nor does it allege any statements that indicated Truist would not take the actions it did with respect to the transferred funds. The complaint does allege that "Truist boasts that its *customers* can 'enjoy peace of mind' [with regards to security] and has a 'team' to assist in instances of fraud," (*see* Dkt. No. 1, ¶ 21 (emphasis added)), but offers no facts to suggest that such representations are false or somehow deceptive. Accordingly, the Court will dismiss Plaintiff's Section 349 claim as against both TD Bank and Truist.

11

### C. Unjust Enrichment

Truist seeks to dismiss Plaintiff's unjust enrichment claim on the basis that "the [c]omplaint does not make any allegation that Plaintiff provided any service to—or conferred any benefit on—Truist." (Dkt. No. 15-1, at 15). Plaintiff argues that it has sufficiently pled a claim for unjust enrichment. (Dkt. No. 27, at 25–27).

"To recover under a theory of unjust enrichment under New York law, a litigant must show 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 201 (2d Cir. 2023) (quoting *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022)).

Plaintiff alleges in support of this claim that it "was and is the lawful owner of the funds contained in its TD Bank account that were unlawfully transferred by TD Bank to Truist" and that consequently "Truist has been unjustly enriched at Plaintiff's expense." (Dkt. No. 1, ¶¶ 46, 48). In response to this allegation, Truist cites *Pincover v. J.P. Morgan Chase Bank, N.A.* (Dkt. No. 15-1, at 14), in which the plaintiff alleged claims of unjust enrichment against KeyBank and Wells Fargo after stolen funds had been deposited into accounts at those banks, 592 F. Supp. 3d 212, 218, 229 (S.D.N.Y. 2022). The court dismissed the plaintiff's claim for unjust enrichment because "[f]unds held in the account of a bank's customer do not represent a benefit to a bank. Instead, they result in the bank's incurring a debt to the account holder." *Id.* at 229 (citation omitted).[5] The Court finds this same principle necessitates dismissing Plaintiff's unjust enrichment claim here.

---

[5] Plaintiff claims that Truist's argument is "nonsensical," but appears to misunderstand it. (*See* Dkt. No. 27, at 27 ("Truist contends that it cannot be financially liable to [Plaintiff], because it received [Plaintiff's] stolen funds, which created a debt between Truist and [Plaintiff].")). The debt that is created is not between Truist and Plaintiff, but rather, between Truist and the owner of the account into which the funds were transferred.

Plaintiff makes two arguments in response. First, it states that "it is axiomatic that the 'law generally treats a failure to return money that is wired by mistake as unjust enrichment or conversion and requires that the recipient return such money to its sender.'" (Dkt. No. 27, at 26 (quoting *In re Citibank Aug. 11, 2020 Wire Transfers*, 520 F. Supp. 3d 390, 396 (S.D.N.Y. 2021), *vacated and remanded sub nom. Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42 (2d Cir. 2022)). But, as Truist rightly points out, this case did not involve an unjust enrichment claim against a bank for funds that had been transferred into its accounts, but rather, involved a claim against "accountholders who received the misdirected funds." (Dkt. No. 28, at 4 (citation omitted); *see also id.* at 396. The other case Plaintiff directly relies on for this point, *Newbro v. Freed*, (Dkt. No. 27, at 26), is similarly inapplicable to the current case. 409 F. Supp. 2d 386, 390–91 (S.D.N.Y. 2006) (involving attempt to recover funds that had been improperly transferred from one brokerage account to another by financial consultant), *aff'd* 2007 WL 642941, 2007 U.S. App. LEXIS 4769 (2d Cir. Feb. 27, 2007) (summary order).

Second, Plaintiff argues that Truist did receive a benefit as its "balance sheets were unquestionably enriched, at [Plaintiff's] expense." (*See* Dkt. No. 27, at 27). But Plaintiff cites no case supporting that such an incidental benefit is sufficient to state a claim for unjust enrichment. *See also Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 Fed. App'x 622, 627 (2d Cir. 2012) (summary order) (explaining that "the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment" and denying unjust enrichment claim because any benefit the defendant received was "incidental" (internal citation omitted)).

Accordingly, the Court dismisses Plaintiff's claim against Truist for unjust enrichment.

V.     **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendant Truist's Motion to Dismiss, (Dkt. No. 15), is **GRANTED**; and it is further

**ORDERED** that Defendant TD Bank's Motion to Dismiss, (Dkt. No. 20), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's complaint, (Dkt. No. 1), is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: February 12, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge